**[Cite as *State v. Fisher*, 2020-Ohio-6868.]**

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

| | |
|---|---|
| State of Ohio | Court of Appeals No. L-19-1212 |
| Appellee | Trial Court No. CR0201901590 |
| v. | |
| Malcolm Fisher | **DECISION AND JUDGMENT** |
| Appellant | Decided: December 23, 2020 |

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Alyssa Breyman, Assistant Prosecuting Attorney, for appellee.

Autumn D. Adams, for appellant.

* * * * *

**OSOWIK, J.**

{¶ 1} Appellant, Malcolm Fisher, was found guilty after a jury trial of violating

R.C. 2913.51(A) and (C), receiving stolen property, a felony of the fourth degree.

{¶ 2} He was subsequently found not amenable to community control and

sentenced to 12 months in prison to be served consecutively to another term of

imprisonment in case No. CR0201701142. Fisher does not appeal the sentence imposed, but does assign errors to the conduct of the jury trial and the findings made by the jury.

{¶ 3} He presents five assignment of error for our review:

I. The trial court erred, and abused its discretion, by giving improper jury instructions.

II. The trial court committed plain error when it allowed a witness to testify as to ownership of the Kawasaki dirt bike without providing any proof of ownership and this unfairly prejudiced Appellant.

III. The trial court erred in failing to direct a verdict in favor of Appellant.

IV. The evidence presented at trial was insufficient to support a conviction for Receiving Stolen Property.

V. The conviction for Receiving Stolen Property was against the manifest weight of the evidence.

## Background

{¶ 4} On April 3, 2019, the Lucas County Grand Jury issued an indictment against Malcolm Fisher and his co-defendants, Jacob Cousino and Gladys Petrey. The indictment charged all three with one count of receiving stolen property, in violation of R.C. 2913.51(A) and (C), a felony of the fourth degree.

{¶ 5} At trial, appellant's co-defendant Cousino testified that on January 1, 2019, Fisher called him around 9:00 or 10:00 a.m., and told him that there were abandoned dirt

2.

bikes at his friend Andrew Pozon's house. Cousino and his wife, Gladys Petrey, then picked up Fisher from his house and drove to Pozon's house. When they arrived at the house, they saw two dirt bikes laying on the ground between the curb and sidewalk. The smaller bike was a PW 90 Yamaha. It was placed into the bed of the truck, while the larger green Kawasaki KX 125 was pushed by Cousino and Fisher to another friend's house.

{¶ 6} Andrew Pozon testified that he told Fisher that there were two dirt bikes in front of his house, and he found it odd that the dirt bikes were mysteriously abandoned at that location directly in front of his house. Later, Pozon told Toledo police that, while he told Fisher that the bikes were abandoned, he did not tell him to come over and retrieve them. He admitted that when he was initially contacted by the police, he lied about having any knowledge of the dirt bikes because he did not want to get involved.

{¶ 7} Toledo police officers responded to a call of a "suspicious person(s)" pushing a dirt bike in the area of Wyckliffe and Groveland. While en route to that location, the officers witnessed, at the intersection of Ledyard and Anderson Parkway around 10:20 a.m., Fisher and Cousino pushing the Kawasaki bike. Petrey drove the truck that had the smaller Yamaha in the back. Fisher stated that the bikes were found on "Rushland Street."

{¶ 8} Police received a report around 1:00 p.m. the same day from C.G. that his green Kawasaki dirt bike had been stolen out of the back of his truck. His home was located about 1.5 miles from where Fisher was found pushing the bike.

3.

{¶ 9} Officer M testified that the bikes were in decent shape for being older bikes. When he went back to the location of where the bikes were initially located according to Fisher, he found no disturbance or imprints in the area between the curb and the sidewalk, which he thought would be expected given the weight of the bike and the ground conditions.

{¶ 10} C.G. testified that he purchased a lime green Kawasaki dirt bike on December 31, 2018, from Facebook Garage Sale. He drove halfway to Grand Rapids, Michigan, where he met the seller. He met the seller and received a bill of sale for the purchase but not a title. He paid $800 and the bike ran good. He last saw the bike around 8:00 a.m. on January 1 and noticed it missing around 11:00 a.m. that same day. The bike was in the back of his truck the last time he had seen it.

{¶ 11} Detective R.B. testified that he oversees the Auto Theft Unit, the Commercial Burglary Unit, and the Property Recovery Unit. He testified that after he was assigned to the case, he attempted to call the individuals that the dirt bikes were titled to in Michigan. One of the bikes was registered in Grand Rapids, Michigan, and the other was registered to a different location in Michigan. He was unable to reach them. He also testified that he is familiar with dirt bikes. He explained that in his experience people do not that often leave valuable property such as the dirt bike on the side of the road. He further explained that the individuals who purchase a dirt bike are supposed to title the vehicle in their name, but the failure to do so is not uncommon and does not constitute a criminal offense. Finally, he testified that even if someone wanted to, it

4.

would be impossible to title a vehicle on New Year's Day because the government offices would be closed.

## Analysis

{¶ 12} In his first assignment of error, Fisher argues that the trial court erred when it granted the state's request to provide the jury with an additional instruction on the receiving stolen property charge. Specifically, the following:

> Testimony has been admitted indicating that the defendant had possession of recently stolen property. You are instructed that possession of recently stolen property, if not satisfactorily explained, is ordinarily a circumstance from which you may reasonably draw the inference and find in light of the surrounding circumstances shown by the evidence in the case that the person in possession knew the property had been stolen.

{¶ 13} The decision to give or refuse to give jury instructions is within the trial court's sound discretion. *State v. McCleod*, 7th Dist. Jefferson No. 00 JE 8, 2001 WL 1647305 (Dec. 12, 2001), citing *State v. Wolons,* 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989). Thus, we will not reverse a verdict on this basis absent a trial court's abuse of discretion.

{¶ 14} The trial court should give a requested jury instruction when the instruction is a correct statement of the law pertaining to the facts of the case and when reasonable jurors might reach the conclusion sought by the instruction. *Murphy v. Carrollton Mfg. Co.,* 61 Ohio St.3d 585, 591, 575 N.E.2d 828(1991).

5.

{¶ 15} Upon review of jury instructions, the appellate court should determine whether the record contains evidence that might lead reasonable minds to reach the conclusion sought by the instruction. *Columbia Gas of Ohio, Inc. v. R.S.V. Inc.*, 7th Dist. Jefferson No. 05JE29, 2006-Ohio-7064, ¶ 55-56.

{¶ 16} Fisher argues that this instruction was fundamentally flawed since the prosecution failed to establish that the Kawasaki dirt bike was stolen. He asserts that the evidence establishes that the bike was abandoned. After all, Pozon had told him that there were two dirt bikes laying in his front yard without any explanation. Hence, appellant insists that the instruction was unreasonable. He maintains that there is no evidence that the bike was stolen, but was somehow unceremoniously and randomly discarded and abandoned in his friend's front yard.

{¶ 17} However, we reject such an assertion, noting that "the mere fact that there is some evidence tending to explain a defendant's possession consistent with innocence does not bar instructing the jury" on an inference on receiving stolen property like the one noted above. *Barnes v. United States*, 412 U.S. 837, 845, fn. 9, 93 S.Ct. 357, 37 L.Ed. 2d 380 (1973). Rather, the jury must weigh the explanation to determine whether it is satisfactory. *State v. Ewing*, 10th Dist. Franklin No. 06AP-243, 2006-Ohio-5523, ¶ 17.

{¶ 18} The jury instruction at issue in this case was identical to that in *Barnes*. The instruction permitted the inference of guilt from unexplained possession of recently stolen property. The court held:

6.

In the present case the challenged instruction only permitted the inference of guilt from unexplained possession of recently stolen property. The evidence established that petitioner possessed recently stolen Treasury checks payable to persons he did not know, and it provided no plausible explanation for such possession consistent with innocence. On the basis of this evidence alone common sense and experience tell us that petitioner must have known or been aware of the high probability that the checks were stolen.

*Id*. at 845.

{¶ 19} Abandoned property is "property over which the owner has relinquished all right, title, claim, and possession with the intention of not reclaiming it or resuming its ownership, possession or enjoyment." *Pancake v. Pancake*, 4th Dist. Lawrence No. 11CA15, 2012-Ohio-1511, ¶ 10, quoting *Doughman v. Long*, 42 Ohio App.3d 17, 21, 536 N.E.2d 394 (12th Dist.1987).

{¶ 20} Abandonment requires affirmative proof of the intent to abandon coupled with acts or omissions implementing the intent. *Id.*, citing *Davis v. Suggs*, 10 Ohio App.3d 50, 52, 460 N.E.2d 665 (12th Dist.1983). The record contains no evidence that C.G. intended to abandon the Kawasaki dirt bike that he had just purchased the day before. In fact, he called the police when he noticed it was missing from the bed of his truck.

7.

{¶ 21} Appellant has failed to affirmatively establish that the dirt bike was abandoned by the owner.

{¶ 22} For these reasons, we find appellant's first assignment of error not well-taken and it is denied.

{¶ 23} In his second assignment of error, Fisher claims plain error on the part of the trial court when it allowed the victim to testify as to ownership without providing proof of ownership, unfairly prejudicing appellant.

{¶ 24} However, the record establishes that trial counsel objected to the victim testifying as to ownership of the dirt bike, specifically because he could not produce evidence of title on the day the bike was reported stolen. Therefore, appellant did not forfeit the argument on appeal, and we will not review this claimed error under a plain error analysis.

{¶ 25} Rather, we will review this assigned error under an abuse of discretion standard as the admission or exclusion of relevant evidence rests within the sound discretion of the trial court. *Toledo v. McDuffey*, 6th Dist. Lucas No. L-17-1227, 2018-Ohio-5198, ¶ 9, citing *State v. Sage*, 31 Ohio St.3d 173, 180, 510 N.E.2d 343 (1987).

{¶ 26} Fisher asserts that R.C. 4505.04 is the exclusive mechanism to establish ownership of the dirt bikes in question.

8.

**{¶ 27}** That section states, in pertinent part:

4505.04 Certificate of title as evidence of ownership; tort action by lessee

(A) No person acquiring a motor vehicle from its owner, whether the owner is a manufacturer, importer, dealer, or any other person, shall acquire any right, title, claim, or interest in or to the motor vehicle until there is issued to the person a certificate of title to the motor vehicle, or there is delivered to the person a manufacturer's or importer's certificate for it, or a certificate of title to it is assigned as authorized by section 4505.032 of the Revised Code; and no waiver or estoppel operates in favor of such person against a person having possession of the certificate of title to, or manufacturer's or importer's certificate for, the motor vehicle, for a valuable consideration.

(B) Subject to division (C) of this section, no court shall recognize the right, title, claim, or interest of any person in or to any motor vehicle sold or disposed of, or mortgaged or encumbered, unless evidenced:

(1) By a certificate of title, an assignment of a certificate of title made under section 4505.032 of the Revised Code, a manufacturer's or importer's certificate, or a certified receipt of title cancellation to an exported motor vehicle issued in accordance with sections 4505.01 to 4505.21 of the Revised Code;

(2) By admission in the pleadings or stipulation of the parties;

(3) In an action by a secured party to enforce a security interest perfected under Chapter 1309. of the Revised Code in accordance with division (A) of section 4505.13 of the Revised Code, by an instrument showing a valid security interest.

{¶ 28} However, appellant's reliance on this code section as a defense is misplaced. It has been established that for purposes of determining the commission of a theft offense under R.C. 2913.02, one need not hold a certificate of title to be in lawful possession of a motor vehicle. *State v. Rhodes*, 2 Ohio St.3d 74, 76, 442 N.E.2d 1299 (1982).

{¶ 29} The law was enacted to protect the rightful owners of motor vehicles against the fraudulent claims of others, not to protect thieves from rightful owners. All that is necessary in a case such as this one with respect to the element "property of another," is evidence of a wrongful taking from the possession of another because the exact state of the title of the stolen property on the date of the crime is of no concern to the thief except that it must have been in someone else. *State v. Emmons*, 57 Ohio App.2d 173, 386 N.E.2d 838 (2d Dist.1978).

{¶ 30} In this case, the court was presented with the testimony of a person who had rightful possession of the vehicle which was stolen and who therefore was empowered to report the vehicle stolen. The testimony of a person in rightful possession of a vehicle when the vehicle was taken from them without permission is sufficient to

10.

allow reasonable minds to conclude that the person later discovered in possession of the vehicle received, retained, or disposed of the property of another, under the requirements of R.C. 2913.51. *State v. Papio*, 6th Dist. Lucas No. L-91-200, 1992 WL 66575 (Mar. 31, 1992).

{¶ 31} For these reasons, the second assignment of error is found not well-taken.

{¶ 32} In appellant's third assignment of error, he claims that the trial court erred in failing to direct a verdict in favor of appellant. We agree with the appellee that appellate review of the denial of a motion for acquittal is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence. *State v. Jefferson*, 6th Dist. Lucas No. L-16-1182, 2017-Ohio-7272, ¶ 15, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 287 N.E.2d 386, ¶ 37. Since appellant's fourth assignment of error asserts that the evidence presented at trial was insufficient to support a conviction for receiving stolen property we will discuss these assignments together.

{¶ 33} The basis of his argument in both assignments is essentially the same as that presented in his second assignment of error. Specifically, that the state failed to show that the victim was the owner of the Kawasaki dirt bike and further, that the state failed to show that Fisher had reason to know that the dirt bike was stolen.

{¶ 34} Whether there is sufficient evidence to support a conviction is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In reviewing a challenge to the sufficiency of evidence, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have

11.

found the essential elements of the crime proven beyond a reasonable doubt. *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Walker*, 55 Ohio St.2d 208, 212, 378 N.E.2d 1049 (1978). *State v. Rybak*, 6th Dist. Lucas No. L-19-1064, 2020-Ohio-5367, ¶ 61.

{¶ 35} R.C. 2913.51(A) provides:

No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense.

{¶ 36} Appellant contends that the prosecution never established that the Kawasaki dirt bike was "property of another."

{¶ 37} R.C. 2913.01(D) defines an owner as:

"Owner" means, unless the context requires a different meaning, any person, other than the actor, who is the owner of, who has possession or control of, or who has any license or interest in property or services, even though the ownership, possession, control, license, or interest is unlawful.

{¶ 38} The Supreme Court of Ohio has succinctly stated that the focus of the ownership statute is whether a defendant has lawful ownership at the time of the offense:

It is apparent from the language of R.C. 2913.01(D) that title ownership in a specific person other than the defendant is not an element of a theft offense. Indeed under this definition a thief can steal from a thief.

12.

Generally a thief is not concerned with who is the owner of property or who possesses a certificate of title to an automobile which he has stolen. Under these two sections it is merely necessary to prove that a defendant deprived someone of property who had "possession or control of, or any license or any interest in" that property. It is unnecessary, however, for one from whom possession or control is taken to have lawful possession or control. In the instant case appellant does not claim that he possessed any right, title, claim or interest in the motor vehicle. The identity of the holder of a certificate of title to the motor vehicle is not the controlling issue. The issue is whether the defendant had lawful possession of the vehicle.

*Rhodes*, 2 Ohio St.3d at 76, 442 N.E.2d 1299.

{¶ 39} In this case, for purposes of ownership, the victim testified that he had purchased the bike on December 31, 2018, for $800 from a person near Grand Rapids, Michigan, and had last seen it in the back of his truck. The victim's testimony was sufficient to establish the "property of another" element.

{¶ 40} Fisher then argues that the state failed to prove that he had reason to believe that the Kawasaki dirt bike had been obtained through the commission of a theft offense.

{¶ 41} It is well-established in Ohio that circumstantial evidence and direct evidence inherently possess the same probative value. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph one of the syllabus. Absent an admission by a

13.

defendant, whether there was reasonable cause for a defendant to know if an item was stolen can only be shown by circumstantial evidence. *State v. Baldwin*, 6th Dist. Wood No. WD-18-064, 2020-Ohio-699, ¶ 35, citing *State v. West*, 8th Dist. Cuyahoga No. 79404, 2002-Ohio-2242, ¶ 843.

{¶ 42} Some factors that may be helpful in determining whether a defendant knew or should have known that property has been obtained through the commission of a theft offense include: (a) the defendant's unexplained possession of the merchandise; (b) the nature of the merchandise; (c) the frequency with which such merchandise is stolen; (d) the nature of the defendant's commercial activities; and (e) the relatively limited time between the thefts and the recovery of the merchandise. *State v. Davis*, 49 Ohio App.3d 109, 112, 550 N.E.2d 966 (8th Dist.1988).

{¶ 43} Fisher was found in possession of the green Kawasaki dirt bike that had very recently been reported stolen. The owner last reported having seen it in the bed of his truck approximately 1.5 miles away. Despite the testimony of his friends and co-defendants that the bikes were abandoned, the veracity and truthfulness of the testimony is a credibility issue left for determination of the jury. Again, we will not evaluate the witnesses' credibility in a challenge to the sufficiency of the evidence. *Baldwin* at ¶ 39-40.

{¶ 44} We therefore find appellant's third and fourth assignments of error not well-taken and denied.

14.

{¶ 45} Appellant's fifth assignment of error claims the conviction for receiving stolen property was against the manifest weight of the evidence. For the most part, he relies on the same arguments advanced in support of his previous assignments of error. He argues that it was unreasonable to infer that he was aware that the dirt bike was property of another when he found it abandoned.

{¶ 46} When reviewing a claim that a verdict is against the manifest weight of the evidence, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the jury clearly lost its way in resolving evidentiary conflicts to create such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. We do not view the evidence in a light most favorable to the state. Instead, we sit as a "thirteenth juror'" and scrutinize the factfinder's resolution of the conflicting testimony. *State v. Robinson*, 6th Dist. Lucas No. L-10-1369, 2012-Ohio-6068, ¶ 15, citing *Thompkins* at 388. Reversal on manifest weight grounds is reserved for the exceptional case in which the evidence weighs heavily against the conviction. *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 47} Although under a manifest-weight standard we consider the credibility of witnesses, we must nonetheless extend special deference to the jury's credibility determinations given that it is the jury who has the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their voice inflections, and

15.

discerning qualities such as hesitancy, equivocation, and candor. *State v. Fell*, 6th Dist. Lucas No. L-10-1162, 2012-Ohio-616, ¶ 14.

{¶ 48} We cannot say that the jury lost its way in its credibility determinations here. We therefore find appellant's fifth assignment of error not well-taken and it is denied.

### Conclusion

Therefore, the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.                                                  
_____
JUDGE

Thomas J. Osowik, J.          

_____
Christine E. Mayle, J.                                                  
JUDGE
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.